UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ERIC STEINMETZ, | Case No. 2:19-CV-64 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| AMERICAN HONDA FINANCE, et al., | |
| Defendant(s). | |

Presently before the court is defendant Experian Information Solutions, Inc.'s ("Experian") motion to dismiss, filed on February 25, 2019. (ECF No. 32). On March 11, 2019, plaintiff Eric Steinmetz ("Steinmetz") filed an amended complaint. (ECF No. 44).

Also before the court is defendant Experian's motion to dismiss plaintiff's amended complaint. (ECF No. 50). Steinmetz filed a response (ECF No. 63), to which Experian replied (ECF No. 72).

Also before the court is defendant American Honda Finance Corporation's ("American Honda") motion to dismiss plaintiff's amended complaint. (ECF No. 60). Steinmetz filed a response (ECF No. 92),[1] to which AHF replied (ECF No. 99).

I. **Background**

Steinmetz filed for chapter 13 bankruptcy on June 30, 2016. (ECF No. 44 at 7). Steinmetz's chapter 13 plan was confirmed on February 15, 2017. *Id.* Pursuant to the terms of his chapter 13 plan, Steinmetz made ongoing payments on two automobile loans to American Honda and Mechanics Bank. *Id.* Steinmetz was discharged on July 16, 2017. *Id.* After his

---

[1] The court hereby grants Steinmetz's joint motion to extend time for plaintiff to respond to motion to dismiss amended complaint. (ECF No. 86).

James C. Mahan
U.S. District Judge

discharge, Steinmetz continued making payments on the American Honda and Mechanics Bank loans. *Id.* at 8. Steinmetz's post-bankruptcy payments were not reported in his "consumer file" by credit reporting agencies ("CRAs"). *Id.*

Although Steinmetz alleges only three causes of action—a violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 *et seq.* against all defendants, a violation of Nevada Revised Statutes ("NRS") § 598C against the CRA defendants, and a violation of NRS § 41.600 against Experian—Steinmetz's prolix complaint details a litany of allegedly-wrongful actions underlying those claims. (*See generally* ECF No. 44).

As relevant here, Steinmetz alleges that American Honda, as a "furnisher" under the FCRA, failed to report positive payment history to the CRAs. *Id.* Further, Experian did not report positive payment on his American Honda and Mechanic's Bank accounts, listed multiple "charge-offs"[2] on his Syncb/Sam's Club account, and reported inconsistent bankruptcy-inclusion dates across several of his accounts. *Id.* Experian's file on Steinmetz included information on his addresses and name, but Experian represented to Steinmetz that his address information did not affect his credit score. *Id.* Experian disclosed the source of the address information using a coding system, rather than "plain English." *Id.* Steinmetz argues that these aspects of Experian's consumer reports, consumer disclosures, and consumer file for Steinmetz were inaccurate under the FCRA. *Id.*

Experian Marketing Solutions offers "behavioral data" services including OmniView, ConsumerView, TrueTouch, and MetroNet. *Id.* No information from these services was included in the disclosures Experian sent to Steinmetz. *Id.*

## II. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[2] A charge-off occurs when a creditor writes off a consumer's debt after several months of delinquency and unsuccessful attempts to collect the debt. Jim Akin, *What Is a Charge-Off?*, EXPERIAN (July 22, 2019), https://www.experian.com/blogs/ask-experian/what-is-a-charge-off/. The consumer remains liable on the debt, and the charge-off is considered a derogatory mark on the consumer's credit report. *Id.*

**James C. Mahan**
**U.S. District Judge**

- 2 -

| | |
|---|---|
| 1 | 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). |

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

. . .
. . .
. . .
. . .
. . .
. . .

**James C. Mahan**
**U.S. District Judge**

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

As an initial matter, the court denies Experian's motion to dismiss (ECF No. 32) as moot in light of Steinmetz's amended complaint (ECF No. 44). The court now turns to the pending motions to dismiss Steinmetz's first amended complaint.

*A. Steinmetz's claim against American Honda Finance Corporation*

"[T]o sustain either a § 1681e or a § 1681i claim, a consumer must first 'make a prima facie showing of inaccurate reporting by the CRA.'" *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010). Although § 1681e refers to "maximum possible accuracy" rather than mere technical accuracy, "this does not relieve [plaintiffs] of the burden to prove that the inaccuracy is 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Id.* at 757 (quoting *Carvalho*, 629 F.3d at 890).

After a debtor makes all of his payments under the bankruptcy plan, "all debts provided for by the plan or disallowed under section 502" are discharged. 11 U.S.C. § 1328. "The Ninth Circuit Bankruptcy Court broadens the meaning of 'provided for' to include any debt when it is 'dealt with' in any manner and 'upon any terms'–not simply when a debt is paid through a bankruptcy trustee." *Reichardt v. Trans Union LLC*, No. CV-18-00223-TUC-RCC, 2019 WL 1359119, at *3 (D. Ariz. Mar. 26, 2019) (citing *In re Gregory*, 19 B.R. 668, 669-70 (B.A.P. 9th Cir. 1982), *aff'd sub nom.* 705 F.2d 1118 (9th Cir. 1983)) (alterations omitted); *see also Rake v.*

*Wade*, 508 U.S. 464, 473 (1993) ("The most natural reading of the phrase to 'provid[e] for by the plan' is to 'make a provision for' or 'stipulate to' something in a plan." [alteration in original]).

After a debt is discharged, a CRA "reporting 'zero balances' is accurate, given that plaintiffs have cast off their personal liability—that is, plaintiffs technically owe nothing more on those accounts." *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp.3d 665, 674 (E.D. Penn. 2015). Thus, this court comes to the same conclusion as the court did in *Reichardt*: "[a] credit reporting agency need not continue to report a mortgage account when the debtor's personal liability on the mortgage account was discharged through bankruptcy, regardless of whether the debtor continues to make payments on the mortgage." *Reichardt*, 2019 WL at *3 (citing *Horsch*, 94 F. Supp.3d at 674–75; *Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 734 (10th Cir. 2014)).

Here, Steinmetz alleges that both Equifax and Experian "reported the American Honda and Mechanics Bank [t]radelines as having balances of $0 and statuses of bankruptcy chapter 13[.]" (ECF No. 44 at 15, 24). Steinmetz argues that such a determination was "inaccurate as [he] continued to make his car payments both during and after his [c]hapter 13 bankruptcy." *Id.*

Steinmetz undisputedly listed his debt to American Honda in his bankruptcy schedules. (ECF No. 44 at 7). As a result, that debt was discharged, and Steinmetz had no personal liability—a zero balance—on the loan. Despite Steinmetz's assertion to the contrary, reporting a zero balance and a bankruptcy chapter 13 status is neither inaccurate nor misleading. American Honda had no legal obligation to report the Steinmetz's positive payment history after the debt was discharged because Steinmetz had no personal liability on the loan.

Steinmetz failed to make a prima facie showing that American Honda reported inaccurate information. His claim fails, and American Honda's motion to dismiss is granted.

B. *Steinmetz's claims against Experian*

Steinmetz perfunctorily alleges three claims against Experian. (ECF No. 44 at 52–53). Resolving Steinmetz's first claim "requires a short journey through an array of statutes (all from Title 15 of the code) with a numbering system . . . that only a lawyer could love." *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007). The "general allegations" in Steinmetz's

James C. Mahan
U.S. District Judge

- 5 -

complaint catalogue several violations of discrete sections of the FCRA—§§ 1681e, 1681g, 1681i, and 1681s—that Steinmetz incorporates by reference into a single claim: "violation of 15 U.S.C. § 1681 *et seq.* (FCRA)."

Steinmetz also scatters various accusations that Equifax violated NRS §§ 598C.130, 598C.160, 598.0915(5), 598.0923(3), and 41.600 throughout his general allegations. This smattering of allegations is incorporated by reference to form two causes of action: "violation of Nevada Revised Statutes, NRS § 598C," and "violation of NRS § 41.600." (ECF No. 44).

Due to the Steinmetz's helter-skelter complaint, the court will address each of Steinmetz's claims in the same order as Experian's motion for summary judgment. (*Compare* ECF No. 44, *with* ECF No. 50).

*1. Steinmetz's claims under §§ 1681e(b) and 1681i and NRS 598C.160: inaccuracy*

The court turns first to plaintiff's allegations that Experian reported inaccurate information under §§ 1681e(b) and 1681i of the FCRA and NRS 598C.160. Steinmetz contends that Experian reported inaccurate information because it (1) failed to report positive payment on his American Honda and Mechanic's Bank accounts, (2) listing multiple "charge-offs" on his Syncb/Sam's Club account, and (3) did not report bankruptcy-inclusion dates uniformly on several of his accounts. (ECF No. 44 at 7, 19, 24, 29–30).

"Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including [the Ninth Circuit], have imposed such a requirement." *Carvalho*, 629 F.3d at 890; *see also Shaw*, 891 F.3d at 759 ("Thus, to sustain either a § 1681e or a § 1681i claim, a consumer must first 'make a prima facie showing of inaccurate reporting by the CRA.'" (citations omitted)); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." (citations omitted)).

As an initial matter, the first violation—Experian's failure to report positive payments on his discharged accounts—fails for the reasons discussed above. Reporting a zero balance and

a chapter 13 bankruptcy status is not inaccurate, so Steinmetz fails to make a prima facie case. The court now turns to Steinmetz's remaining allegations.

### i. Charge-offs

As the Ninth Circuit indicated in *Carvalho,* an item on a credit report is "incomplete or inaccurate" when it is "patently incorrect" or it is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho*, 629 F.3d at 890 (quoting *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009)).

Therefore, the court must determine whether reporting charge-offs for several consecutive months is either patently incorrect or misleading such that it would adversely affect credit decisions. *Shaw v. Equifax Info. Solutions, Inc.* is instructive. *Shaw v. Equifax Info. Solutions, Inc.,* 204 F. Supp. 3d 956 (E.D. Mich. 2016) ("*Gail Shaw*"). In *Gail Shaw*, the Eastern District of Michigan found that:

> [T]he Experian credit report for [p]laintiff reflects the remaining balance on her account, confirms that the account has been charged off, and identifies [p]laintiff as the responsible consumer. The [a]ccount [h]istory section shows seven full years of [p]laintiff's payment status—from nearly three years of "on-time" payments, to delinquent payments, to being in default, to having the account charged off, all of which are indisputably accurate. Although there is another section of her Experian credit report that shows "CO" for March–October 2015, there is nothing to indicate, as [p]laintiff intimates, that anyone would believe there has been more than one charge off because, as all parties agree, there is only one charge off event.

*Gail Shaw*, 204 F. Supp. 3d at 961.

Here, Steinmetz contends that listing multiple "charge-offs" on his Syncb/Sam's Club account was also inaccurate, as these [t]radelines could only be charged off once." (ECF No. 44 at 12). Indeed, the parties tacitly agree that an account can be charged-off only once. (ECF Nos. 44 at 12, 50 at 4–5). But Steinmetz does not dispute that he was personally responsible for the charged-off debts. (*See generally* ECF No. 44). Steinmetz does not dispute that his tradelines were, in fact, charged-off. *Id.*

Consequently, "there is nothing to indicate, as [Steinmetz] intimates, that anyone would believe there has been more than one charge off because, as all parties agree, there is only one

charge off event." *Gail Shaw*, 204 F. Supp. 3d at 961. Further, Steinmetz has failed to allege how reporting charge-offs on a single tradeline in consecutive months would be "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho*, 629 F.3d at 890.

Accordingly, Steinmetz's claims fail regarding purportedly-inaccurate charge-offs.

### ii. Bankruptcy-inclusion dates

The court must determine whether Steinmetz has sufficiently alleged that the differing "bankruptcy-inclusion dates" on several accounts on his credit report is "patently incorrect" or is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho*, 629 F.3d at 890. In *Giovanni v. Bank of Am., Nat. Ass'n*, the court applied this standard and held that "[a]n internally inconsistent report . . . does not establish an FCRA violation." *Giovanni v. Bank of Am., Nat. Ass'n*, No. C 12-02530 LB, 2013 WL 1663335, at *7 (N.D. Cal. Apr. 17, 2013) (quoting *Gorman*, 584 F.3d at 1163). Thus, there must be more than an inconsistency; the inconsistency must be reasonably expected to adversely affect credit decisions.

Further, "[s]everal courts, including two in this district involving closely analogous factual situations, have held that reports, after discharge, of delinquencies in payment during the bankruptcy proceedings are not 'incomplete or inaccurate' information for the purposes of the FCRA." *Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 57856, at *6 (N.D. Cal. Jan. 3, 2013) (citations omitted) (collecting cases). The court in *Mortimer* went on to hold that, as long as a creditor or CRA reports that an account was discharged in bankruptcy and has a zero balance, "it is accurate to report, after discharge, that a debtor was delinquent during the pendency of bankruptcy because at that time the debt existed." *Id.* at *7.

Experian reported Steinmetz's tradelines had a variety of bankruptcy inclusion dates, including: June 30, July 6, July 31, and August 7, 2016, and July 19, 2017. (ECF No. 44 at 29–30). Steinmetz argues that only the June 30, 2016, date was correct, making Experian's report inaccurate as to the other dates. *Id.* at 30. In particular, Steinmetz contends that "the inaccurate 'inclusion' dates appeared to have differing impacts on the length of time by which accounts

would be reported as negative" and that "[t]hese disparate bankruptcy 'inclusion' dates and negative reporting periods had the tendency to confuse an ordinary consumer." *Id.*

However, Experian notes that Steinmetz "did not (and cannot) plead that bankruptcy inclusion dates affect credit decisions, or that Experian includes bankruptcy inclusion dates on consumer credit reports sent to third parties; rather, [Steinmetz] admits this information appears on disclosures sent only [to] him." (ECF No. 50 at 8). The court agrees.

Further—even assuming that the bankruptcy inclusion dates are included in consumer reports—Steinmetz does not allege that the various dates are "patently incorrect." Instead, Steinmetz admits that "[t]he Experian [d]isclosures all reported the fact of [Steinmetz's] [c]hapter 13 bankruptcy accurately as having been filed in June 2016, resolved in July 2017, and having a status of discharged." (ECF No. 44 at 29). To the extent that the bankruptcy-inclusion dates vary on Steinmetz's account, the error amounts to an internal inconsistency that does not rise to the level of an FCRA violation. To the contrary, Experian correctly reported Steinmetz's bankruptcy dates—which is what would adversely affect credit decisions—rather than when a tradeline was included in his correctly-reported bankruptcy.

Steinmetz tacitly concedes this point: "the presence of a bankruptcy is a major factor in credit scoring models. Experian itself acknowledges that bankruptcy can be a significant factor." *Id.* at 30. Nowhere in Steinmetz's complaint does he allege that a tradeline's bankruptcy-inclusion date factors into *any* credit score, and he does not allege that these bankruptcy-inclusion dates affected *his* credit score. Steinmetz's sole allegation on this point is that "the inaccurate 'inclusion' dates appeared to have differing impacts on the length of time by which accounts would be reported as negative." *Id.* This allegation does not rise to the level of plausibility required to survive a motion to dismiss, particularly considering Experian is, by Steinmetz's own admission, aware of when he filed and was discharged from bankruptcy. *Id.*

Accordingly, Steinmetz's claims as they pertain to the bankruptcy-inclusion dates fail.

   2. *Steinmetz's § 1681e(b) claim: consumer reports*

Section 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares *a consumer report* it shall follow reasonable procedures to assure maximum possible

accuracy of the information concerning the individual about whom the report relates." 15 USCS § 1681e(b) (emphasis added). Thus, "[t]o bring a § 1681e claim, the 'consumer must present evidence tending to show that a CRA prepared a report containing inaccurate information.'" *Shaw*, 891 F.3d at 755 (quoting *Guimond*, 45 F.3d at 1333). The FCRA defines a consumer report as follows:

> (1) In general. The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 604.

15 USCS § 1681a(d)(1).

> The law of this circuit, as well as that of almost all other circuits that have addressed the question, supports the following proposition: *If a consumer reporting agency provides a report based on a reasonable expectation that the report will be put to a use permissible under the FCRA, then that report is a "consumer report" under the FCRA and the ultimate use to which the report is actually put is irrelevant to the question of whether the FCRA governs the report's use and the user's conduct.*

*Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1274 (9th Cir. 1990) (emphasis in original). "The language of § 1681b does not expand the definition of a consumer report; it instructs the CRAs on when it is permissible to furnish a consumer report." *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1124 (D. Nev. May 14, 2008).

Thus, where "allegations relate solely to the accuracy of [a CRA's] disclosure of files prepared for [a consumer]," the allegations relate to a consumer disclosure, which is "something separate and distinct from a 'consumer credit report' prepared for third parties." *Larson v. Trans Union, LLC*, 2013 WL 5565629, at *4 (N.D. Cal. Oct. 15, 2013). Because the two are distinct,

- 10 -

"[c]ourts expressly caution against conflating these two types of documents when interpreting the FCRA." *Id.*

Steinmetz argues, despite the Ninth Circuit's holding in *Comeaux*, that Experian's contention that consumer disclosures and consumer reports are fundamentally distinct is "[b]ased on its outdated strawman argument." (ECF No. 63 at 16). The court's admonishment in *Larson* notwithstanding, Steinmetz conflates consumer disclosure and consumer reports by arguing that the two are analogous because "every item of information on a consumer disclosure *might* be provided on a consumer report." (ECF No. 44 at 6).

Steinmetz's argument is unavailing. An essential element of § 1681e claims is an inaccuracy in a consumer report. 15 USCS § 1681e(b); *Shaw*, 891 F.3d at 755. Steinmetz's § 1681e claim, on the other hand, alleges inaccuracies in consumer disclosures sent to him. (ECF No. 44). Steinmetz's attempt to invoke § 1681b to expand the definition of a consumer report runs afoul of controlling precedent.

Therefore, Steinmetz's § 1681e claim fails.

*3. Steinmetz's § 1681g and NRS 598C.130 claim: consumer disclosures*

Section 1681g of the FCRA provides that "[e]very consumer reporting agency shall, upon request, and subject to section 610(a)(1), clearly and accurately disclose to the consumer . . . [a]ll information *in the consumer's file* at the time of the request." 11 U.S.C. § 1681g(a)(1) (emphasis added). The Ninth Circuit has unambiguously held that "[a] consumer's file includes 'all information on the consumer that is recorded and retained by a CRA that might be furnished, or has been furnished, in a consumer report on that consumer.'" *Shaw*, 891 F.3d at 759 (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711–12 (3rd Cir. 2010)).

But this does not open the door for every shred of information to be included in a consumer disclosure simply because there is some slight chance it might someday be in a consumer report: "[a] more reasonable view . . . would require some showing . . . that [the CRA] included similar information in a consumer report in the past or that it plans to do so in the future." *Gillespie*, 482 F.3d at 909. As the Seventh Circuit remarked, "Congress, it seems,

chose to limit the right to contest information to material actually contained in consumer reports. And of course it was free to draw the line as it did." *Id.* at 910.

The remaining allegations underlying Steinmetz's FCRA claim and his NRS 598C claim pertain to consumer disclosures he received from Experian. (ECF No. 44). As an initial matter, Steinmetz's complaint is fatally deficient: Steinmetz never alleged that he requested a consumer disclosure. *See generally id.* To the contrary, Steinmetz's only allegation is that he requested a reinvestigation into the alleged inaccuracies in his file. *Id.* Indeed, Steinmetz argues that "[n]othing in the FCRA *requires* Experian to provide full [s]ection 1681g disclosures as part of its [s]ection 1681i(a)(6)(B)(ii) reinvestigations; in fact, Experian often sends its reinvestigations in 'abbreviated' form that would not constitute a [s]ection 1681g disclosure." *Id.*

In an abundance of caution, the court nonetheless considers the underlying allegations in Steinmetz's complaint. First, the same allegations regarding Steinmetz's bankruptcy-inclusion dates are captioned as a violation of § 1681g as well. *Id.* at 29–30. For the reasons discussed above, this claim fails.

Steinmetz argues that Experian failed to report "behavioral data" that it allegedly maintained about him. *Id.* at 33–36. This argument is without merit, and the court need not address it in depth. Steinmetz's claims rely on information in OmniView, ConsumerView, TrueTouch, or MetroNet. *Id.* His claim fails. Steinmetz does not allege that any of these products are credit products regulated by the FCRA, let alone that they are either consumer reports or consumer disclosures subject to either §§ 1681e or 1681g. *See generally id.* Further, the court—looking at the only online brochure referenced in Steinmetz's complaint with a working link—agrees with Experian: those products are provided by Experian Marketing Services, not defendant Experian Information Services. *Id.* at 34–35 n.36–43; (*see also* ECF No. 50 at 18).

Steinmetz further argues that Experian violated § 1681g by disclosing the source of information regarding his address and name "through cryptic, numeric codes." *Id.* at 37. "Section 1681g(a)(2), however, specifically requires the transmittal of an agency's sources *upon request therefor*." *Lopez v. Edge Info. Mgmt., Inc.*, No. CV 17-179, 2018 WL 1071878, at *4

(E.D. Pa. Feb. 27, 2018) (emphasis added). As in Lopez, "[p]laintiff fails to allege that he ever requested the sources used to create his background report . . . which, as described above, fails to impose a responsibility on [d]efendant to provide its sources." *Id.* However, unlike *Lopez*, there is not even evidence in the record that Steinmetz requested his consumer disclosure in the first place. *Compare id.*, *with* (ECF No. 44). Moreover, although Steinmetz argues that the numeric codes "deprived [him] of any ability to determine [the information's] accuracy," Steinmetz does not actually allege that he found his name or address to be inaccurate. (ECF No. 44 at 37–38).

Steinmetz also contends that Experian failed to explain the reason why "soft inquiries"[3] had been made, which, in Steinmetz's estimation, is a violation of Experian's statutory duties. (ECF No. 44 at 31–33). However, soft inquiries, by their very nature, are not shared with third parties. Thus, consistent with the Ninth Circuit's reasoning in *Comeaux*, soft inquiries—let alone the reason why those inquiries were made or approved—were not part of Steinmetz's file in the first place.[4]

Thus, Steinmetz's second cause of action fails, and Experian's motion to dismiss is granted as to that claim.

### 4. Steinmetz's NRS §§ 598, 598C, and 41.600 claim: consumer fraud

Finally, "Experian represented that its list of addresses 'do not affect your credit score.'" (ECF No. 44 at 38). Steinmetz argues that Experian violated § 1681g because "[i]n representing that [Steinmetz's] addresses would not form the basis for any credit score, Experian made a false representation." *Id.* at 40. But Steinmetz has failed to allege anything beyond mere speculation: "Experian misinformed [Steinmetz] that [his] address information would not impact [his] credit score, when in fact it *might*." *Id.* at 40 (emphasis added). Steinmetz's allegation does not rise to the level of plausibility required to survive a motion to dismiss.

---

[3] The consumer disclosures sent to Steinmetz included information about inquiries made regarding his credit report. (ECF No. 44 at 31). "Soft inquiries" are shared only with the plaintiff, whereas "hard inquiries" appear on Steinmetz's consumer report and are shared with third parties. *Id.*

[4] In the alternative, Steinmetz contends that Experian failed to identify each person that procured a consumer report under § 1681g(a)(3). (ECF No. 44 at 36–37). Yet Steinmetz does not allege that he requested this information, which would have triggered Experian's § 1681g obligations. *Id.* As a result, Steinmetz's alternative argument is similarly unavailing.

Steinmetz's remaining allegation in support of his consumer fraud claim is that "it is axiomatic that addresses can serve as a factor in determining risk premiums for insurance or eligibility for employment." *Id.* at 39. Steinmetz's axioms pertain to car insurance and citizenship requirements to be the president or a city employee in Boston. *Id.* at 39 n.54–55.

Experian correctly points out that neither of these axioms require a credit report. (ECF No. 50 at 20–22). To the contrary, insurance premiums are determined by the information that the insured provides to his or her carrier. *Id.* at 22 n.15. Steinmetz concedes that *workers*—not CRAs—must provide proof of residency each year to by employed by the City of Boston. (ECF No. 44 at 39 n.55).

Therefore, Steinmetz's third cause of action fails. Experian's motion to dismiss is granted.

   *5. Leave to amend*

Steinmetz argues in response to both motions that "[e]ven if the [c]ourt reaches the unlikely conclusion that there are defects in [Steinmetz's] pleading [that] warrant dismissal, it should permit [him] the opportunity to cure those pleading defects in amended pleading[.]" (ECF Nos. 63 at 24, 92 at 5).

Although "[t]he court should freely give leave when justice so requires," the court is not obligated to do so. FED. R. CIV. P. 15(a)(2). In particular, the court need not give leave to amend where "it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, "leave to amend may be denied if it appears to be futile or legally insufficient." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citing *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986)).

Steinmetz has already amended his complaint once. (ECF Nos. 1, 44). Steinmetz contends in response to Experian's motion to dismiss the amended complaint that he "ha[d] no opportunity to assess what factors the [c]ourt [found] lacking." (ECF No. 63 at 25). This argument is belied by the docket: Experian filed an identical motion to dismiss the original complaint. (ECF No. 32). Steinmetz's amendment did not address the issues raised in the

original motion to dismiss; instead, Steinmetz added his consumer fraud claim. (*Compare* ECF No. 1, *with* ECF No. 44).

Steinmetz's allegations are fatally deficient. Leave to amend would be futile. Much of Steinmetz's complaint rests on erroneous interpretations of the FCRA. Steinmetz's claims are predicated on the incorrect conflation of consumer reports and consumer disclosures, which fundamentally invalidates his claims. Steinmetz did not request a consumer disclosure or Experian's sources of information, which is essential to state a § 1681g claim. Steinmetz cannot prove that the addresses do, in fact, factor into his credit score.

Further, Steinmetz cannot allege an inaccuracy in Experian's consumer disclosures or reports. Reporting zero balances on his tradelines is not inaccurate under the FCRA after Steinmetz discharged his personal obligation on them. Because he does not have personal liability, not reporting positive payment history is similarly accurate. Similarly, reporting multiple charge-offs is not an inaccuracy that rises to the level of an FCRA violation.

Thus, leave to amend is not granted. Steinmetz's claims are dismissed with prejudice.

## IV.  Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Experian's motion to dismiss (ECF No. 32) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Steinmetz's motion to extend time (ECF No. 86) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Experian's motion to dismiss (ECF No. 50) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that American Honda's motion to dismiss (ECF No. 60) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Steinmetz's claims against Experian and American Honda be, and the same hereby are, DISMISSED with prejudice.

. . .

. . .

The clerk is instructed to enter judgment and close the case accordingly.

DATED September 16, 2019.

_____
UNITED STATES DISTRICT JUDGE